UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| BLACK'S 14TH STREET LLC, | § | |
| Plaintiff, | § | |
| v. | § | CIVIL NO. W-23-CV-00788-ADA |
| PEARL DIVE OYSTER BAR LLC, | § | |
| Defendant. | § | |

ORDER GRANTING MOTION FOR
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

I.  INTRODUCTION

Before the Court is Plaintiff Black's 14th Street LLC *d/b/a* Pearl Dive Oyster Palace ("Pearl Palace")'s Motion for Temporary Restraining Order and Preliminary Injunction. ECF No. 3. Notice has been provided to Defendant Pearl Dive Oyster Bar LLC ("Pearl Bar"). *Id.* Having considered the briefing,[1] the relevant facts, and the applicable law, the Court **GRANTS** the motion for the reasons set forth herein.

II.  FACTUAL BACKGROUND

This case is about oyster restaurants. Plaintiff is a Washington, DC restaurant group. ECF No. 3-2 ("Black Decl.") ¶ 3. Among Plaintiff's offerings is the Pearl Dive Oyster Palace restaurant. *Id.* In connection with this restaurant, Pearl Palace owns two federally registered trademarks, a standard character word mark PEARL DIVE OYSTER PALACE® (the "Name Mark") and a

---

[1] The Court notes with disapproval that Plaintiff appears to have "pre-sealed" parts of its briefing, *i.e.*, it has redacted sensitive information, such as its sales expenditures, without even filing a sealed version of its briefing, much less moving for leave to file sealed documents. *See, e.g.*, ECF No. 3-2 ¶ 7. In making its decision, the Court has not relied on any sealed information. (Indeed, it is difficult to see how the Court *could* have relied on such information). Nevertheless, the Court expects better from Plaintiff's counsel in the future.

design plus words mark for the stylized words "PEARL DIVE OYSTER PALACE" over an image of a diver (the "Diver Mark"). ECF No. 3 at 4. Both are incontestable. Black Decl. ¶ 6.

Defendant is also a restaurant. *Id.* ¶ 11. Defendant's restaurant, Pearl Dive Oyster Bar, recently opened in Austin, Texas. *Id.* ¶¶ 11–12. This restaurant initially used a logo with a diver. ECF No. 3 at 7. Plaintiff never authorized Defendant to use the Name Mark or the Diver Mark. Black Decl. ¶ 13.

Plaintiff sent Defendant a cease-and-desist letter. ECF No. 3-19 ("Pezzano Decl.") ¶ 3. But ensuing negotiations were fruitless. *See id.* ¶¶ 3–10. Pearl Bar said it would change. *See id.* ¶ 5. And it did. *See id.* ¶ 8. Pearl Bar's logo replaced the diver with an octopus. ECF No. 3-25. But the name stayed the same. *See* Black Decl. ¶ 8. And, to Plaintiff, that was unacceptable. *See id.* ¶ 9. Plaintiff claims that one of Defendant's owners is a criminal whose bars were used for such sordid activities as "narcotics trafficking, money laundering and night club activity." Pezzano Decl. ¶¶ 10–11. Plaintiff would rather not have Pearl Palace confused for one such bar. *See* ECF No. 3 at 10.

Pearl Palace filed a verified complaint and a motion for temporary restraining order and preliminary injunction on November 17, 2023. ECF Nos. 1, 3. The complaint lists seven counts: 1) federal trademark infringement, 2) federal counterfeiting, 3) federal false designation of origin, passing off, and unfair competition, 4) Texas common law trademark infringement, 5) Texas common law unfair competition, 6) Texas common law false designation of origin, and 7) Texas common law unjust enrichment. ECF No. 1 at 14–20.

### III.    LEGAL STANDARD

"The several courts vested with jurisdiction of civil actions arising under [trademark law] shall have power to grant injunctions, according to the principles of equity and upon such terms as

the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under subsection (a), (c), or (d) of section 1125 of this title." 15 U.S.C. § 1116.

To obtain a temporary restraining order, the moving party must establish that "(1) there is a substantial likelihood that the movant will prevail on the merits; (2) there is a substantial threat that irreparable harm will result if the injunction is not granted; (3) the threatened injury outweighs the threatened harm to the defendant; and (4) the granting of [injunctive relief] will not disserve the public interest." *Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987); *see also Anderson v. Jackson*, 556 F.3d 351, 360 (5th Cir. 2009). "[W]here the opposing party has notice of the application for a temporary restraining order, such order does not differ functionally from a preliminary injunction." *Dilworth v. Riner*, 343 F.2d 226, 229 (5th Cir. 1965) (cleaned up).

## IV. ANALYSIS

### a. Likelihood of Success on the Merits

To show a likelihood of success, the plaintiff must present a prima facie case, but need not prove that it is entitled to summary judgment. *See Daniels Health Scis. L.L.C. v. Vascular Health Scis. L.L.C.*, 710 F.3d 579, 582 (5th Cir. 2013). "When the plaintiff has brought multiple causes of action, he need only present a prima facie case on one of them" to show a substantial likelihood of success on the merits. *Arnold v. Barbers Hill Indep. Sch. Dist.*, 479 F. Supp. 3d 511, 519 (S.D. Tex. 2020). As shown below, Pearl Palace has shown a substantial likelihood of success on the merits of its federal trademark infringement claim. The Court therefore only addresses that claim.

To succeed on its federal trademark infringement claim, Pearl Palace must show that Pearl Bar uses "in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or

services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114. Pearl Palace must demonstrate that "it (1) possesses a valid trademark and (2) that the defendant's products create a likelihood of confusion as to source, affiliation, or sponsorship." *Whirlpool Corp. v. Shenzhen Sanlida Elec. Tech. Co., Ltd.*, 80 F.4th 536, 543 (5th Cir. 2023).

For the first element, the Name Mark and Diver Mark are both registered to Pearl Palace and incontestable. Black Decl. ¶¶ 3–6. Also, Pearl Palace never authorized Pearl Bar to use either mark. *Id.* ¶ 13. This element is thus proven. *See Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 237 (5th Cir. 2010) ("[P]roof of the registration of a mark with the PTO constitutes prima facie evidence that the mark is valid . . . .").

For the second element, courts analyze the eight "digits of confusion:" "(1) the type of mark infringed, (2) the similarity between the marks, (3) the similarity of the products, (4) the identity of the retail outlets and purchasers, (5) the identity of the advertising media used, (6) the defendant's intent, (7) evidence of actual confusion, and (8) the degree of care exercised by potential purchasers." *Whirlpool*, 80 F.4th at 545 (quoting *Future Proof Brands, L.L.C. v. Molson Coors Beverage Co.*, 982 F.3d 280, 289 (5th Cir. 2020)). "Two of those digits possess particular prominence:" the defendant's intent (which can be sufficient, even standing alone, to infer a likelihood of confusion) and evidence of actual confusion (which is the "best evidence of a likelihood of confusion"). *Future Proof Brands*, 982 F.3d at 289 (quoting *Viacom Int'l v. IJR Cap. Invs., L.L.C.*, 891 F.3d 178, 197 (5th Cir. 2018)). The digits of confusion test is highly flexible and case-specific—a court may find a likelihood of confusion even when the majority of the digits weigh against the markholder. *See id.*

The Court is mindful that this case is at an early stage and that only Pearl Palace has submitted briefing and evidence. Under that particular context, the Court finds Pearl Palace's evidence shows at least the following digits favor a likelihood of confusion:

(2) Pearl Bar's name and original logo are both very similar to Pearl Palace's marks; *compare* ECF No. 3 at 4, *with id.* at 7;

(3) Pearl Palace and Pearl Bar offer the same restaurant and bar services; *compare* ECF No. 3-11, *with* ECF No. 3-18;

(6) Pearl Bar acted with bad intent given at least its initial logo's imitation of the Diver Mark, which, in the services context, is analogous to the imitation of packaging material; *see Future Proof Brands*, 982 F.3d at 296; *compare* ECF No. 3 at 4, *with id.* at 7.

Weighing these digits, especially given the Fifth Circuit's precedent on the importance and sufficiency of the defendant's intent, the Court finds that Pearl Palace has established, at least for now, a likelihood of confusion as to source, affiliation, or sponsorship. Both elements of a federal trademark infringement claim have been satisfied. *See Whirlpool*, 80 F.4th at 543.

In sum, the Court finds that Pearl Palace has shown a substantial likelihood of success on the merits of its federal trademark infringement claim. As will be shown below, the law is such that with this finding, the remaining preliminary injunction factors almost automatically favor Pearl Palace too.

### b. Substantial Threat of Irreparable Harm

Under the Lanham Act, a plaintiff seeking "to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office" is "entitled to a rebuttable presumption of irreparable harm . . . upon a finding of likelihood of success on the merits for a

violation identified in this subsection in the case of a motion for a preliminary injunction or temporary restraining order." 15 U.S.C. § 1116(a).

Since the Court found a likelihood of success on the merits above, the rebuttable presumption applies. Through this presumption, Pearl Palace has shown a substantial threat of irreparable harm.

### c. Balance of Hardships

The Court is now required to balance the harms to Pearl Bar from granting the motion against the harms to Pearl Palace from denying the motion. In a similar situation, the Fifth Circuit held that "loss of market shares, immediate and almost complete loss of revenue stream from the sale of products, interruption of the normal course of business … and loss of invested capital" were all mere pecuniary, presumptively reparable harms. *Whirlpool*, 80 F.4th at 546. Weighed against the presumed irreparable harm to the markholder, the district court was correct to find that the balance favored the markholder. *Id.* The Court finds that the same reasoning applies here to this similar situation. The balance of hardships therefore favors Pearl Palace.

### d. Public Interest

"Finally, although we recognize that the public has an interest in encouraging commercial competition, the public also has an interest in the effective enforcement of our trademark laws." *Whirlpool*, 80 F.4th at 546. The general caselaw trend is that the latter outweighs the former. *Compare Denbra IP Holdings, LLC v. Thornton*, 521 F. Supp. 3d 677, 690 (E.D. Tex. 2021) ("The public interest is always served by requiring compliance with Congressional statutes such as the Lanham Act and by enjoining the use of infringing marks.") (quoting *Sparrow Barns & Events, LLC v. Ruth Farm Inc.*, No. 4:19-cv-67, 2019 WL 1560442, at *10 (E.D. Tex. Apr. 10, 2019)), *with Savage Tavern, Inc. v. Signature Stag, LLC*, 589 F. Supp. 3d 624, 662–63 (N.D. Tex. 2022)

(noting the conflict between the interests in competition and trademark enforcement, finding that this factor is "unhelpful in the trademark-injunction context" as just a proxy for the strength of the movant's case, and according this factor "little weight in [the] final calculus").

Without otherwise weighing in on how to balance these interests generally, the Court finds that in this case the public interest favors enforcement of trademark. This is because of the strength of Pearl Palace's case and the newness of Pearl Bar, whose removal would thus be less likely to cause significant market disruption.

### e. Bond

"The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The Court has discretion to set the bond amount—including the discretion to require no bond at all. *See Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir. 1996).

Pearl Palace argues that no bond should be required. Pearl Bar has only recently opened. ECF No. 3 at 20. Pearl Palace thus argues that Pearl Bar will incur minimal expenses, limited to taking down its website and suspending all self-promotion, if enjoined. *Id.* Pearl Palace further argues that "no one, and especially not [Pearl Bar], will suffer any harm if the Court grants the requested TRO and PI and stops [Pearl Bar]'s deceptive and infringing activities." *Id.*

The Court disagrees with Pearl Palace. It is true that a website can be taken down with a few clicks. But Pearl Palace's focus on the costs of compliance is too narrow. The Federal Rules require a bond to pay "costs *and damages*." Fed. R. Civ. P. 65(c) (emphasis added). And the damage to Pearl Bar from a wrongful injunction exceeds the compliance costs. Having to cease marketing during the critical period just after grand opening could well affect Pearl Bar's continuing

7

viability as a business. Thus, Pearl Palace's claim that "no one, especially not Defendant, will suffer any harm if the Court grants the requested TRO and PI and stops Defendant's deceptive and infringing activities" misses the mark. ECF No. 3 at 20. It assumes that Pearl Palace will win and that Pearl Bar could not possibly "have been wrongfully enjoined or restrained." *See* Fed. R. Civ. P. 65(c). Were that the case, were strength of merits enough to forego the bond requirement, then very few successful PI or TRO movants—who, *by definition*, have shown a substantial likelihood of success on the merits—would have to post bond. That contradicts the spirit of the Rules.

Having found that a bond is appropriate, the Court sets the bond amount at $20,000.

V.     **CONCLUSION AND TEMPORARY RESTRAINING ORDER**

For the foregoing reasons, **IT IS ORDERED** that Plaintiff Black's 14th Street LLC, *d/b/a* Pearl Dive Oyster Palace®'s motion is **GRANTED.**

The Court enters the following temporary injunctive relief:

1. Defendant Pearl Dive Oyster Bar LLC, its directors, members, officers, agents, servants, employees, subsidiaries, affiliates, and all persons in active concert or participation with, through, or under it, are hereby restrained and enjoined from:

    a. Using the PEARL DIVE OYSTER BAR Mark and any other word, name symbol, device, or combination thereof that is confusingly similar to Plaintiff Black's 14th Street LLC, *d/b/a* Pearl Dive Oyster Palace®'s PEARL DIVE OYSTER PALACE® Trademarks for, on, and/or in connection with the manufacture, distribution, advertising, promotion, offering for sale, and/or sale of any goods or services for restaurant and bar services; and

    b. Engaging in any false, misleading, and/or deceptive conduct in connection with Plaintiff and its goods and services, including, without limitation, representing

    itself to be an authorized distributor, vendor, agent, representative, retailer, and/or licensee of Plaintiff and/or any of Plaintiff's goods or services, including, without limitation, Plaintiff's restaurant and bar services; and

    c. Falsely representing to have an association or affiliation with, sponsorship by, and/or connection with, Plaintiff and/or any of Plaintiff's goods and services, including, without limitation, Plaintiff's restaurant and bar services.

2. Plaintiff Black's 14th Street LLC, *d/b/a* Pearl Dive Oyster Palace® shall deposit with the Court **twenty thousand U.S. dollars ($20,000.00),** either as cash or cashier's check, which the Court deems sufficient to cover any damages suffered by Defendant Pearl Dive Oyster Bar LLC as a result of a wrongful restraint hereunder.

3. Any Defendant that is subject to this Order may appear and move to dissolve or modify the Order on two days' notice to Plaintiff, or on shorter notice as set by this Court.

4. This Temporary Restraining Order, entered at 5:00 PM on this 28th day of November, 2023, shall remain in effect for 14 days from the date of this Order.

## VI. PRELIMINARY INJUNCTION HEARING

The above-referenced cause is **SET** for a preliminary injunction hearing on the 13th day of December, 2023, at 1:30 PM, in the U.S. District Court, 800 Franklin Ave., Waco, Texas 76701.

At the hearing, Defendant and/or any other affected persons may challenge the appropriateness of this Order and move to dissolve the same and at which time the Court will hear argument on Plaintiff's requested preliminary injunction.

Defendant is hereby on notice that failure to appear at the hearing may result in the imposition of a preliminary injunction against them pursuant to 15 U.S.C. §§ 1114 and 1116, Fed. R. Civ. P. 65, and this Court's inherent authority.

Defendant's answering papers, if any, shall be filed and served electronically upon Plaintiff's counsel of record by 5 PM on the 5th day of December, 2023. Any reply shall be filed and served by Plaintiff by 12 PM on the 11th day of December, 2023.

**SIGNED** this 28th day of November, 2023.

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE